**Paul Ross WOOTON, et al.,
Plaintiffs–Appellants,**

v.

**PUMPKIN AIR, INC., et al.,
Defendants–Appellees.**

No. 88–4101.

United States Court of Appeals,
Fifth Circuit.

April 10, 1989.

William Gee, III, F. Ray Mouton, Lafayette, La., for plaintiffs-appellants.

Kenneth H. Laborde, Sharon L. Gross, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, La., for Pumpkin Air, Inc.

A.R. Christovich, Christovich & Kearney, New Orleans, La., for Bell Helicopter & Textron.

Darrell Cherry, Robert E. Kerrigan, Jr., Deutsch, Kerrigan & Stiles, New Orleans, La., for AVCO Corp.

Before, THORNBERRY, GEE, and POLITZ, Circuit Judges.

THORNBERRY, Circuit Judge:

Plaintiff-appellant Paul Wooton was employed by Samedan Oil Company as a rig worker assigned to Samedan's fixed platform located in the Gulf of Mexico off the coast of Louisiana on the Outer Continental Shelf (the Shelf). On October 24, 1985 Wooton and seven other passengers boarded a Bell Helicopter operated by Pumpkin Air, Inc. These passengers were to be transported from Intracoastal City, Louisiana to the Samedan platform.

As the helicopter approached the platform, a malfunction allegedly occurred in one of the helicopter's engines. The helicopter crashed into the helipad killing the pilot and one passenger. Mr. Wooton was severely burned. Mr. Wooton, his daughter, and his wife (appellants) filed suit on October 22, 1986 in the United States District Court for the Western District of Louisiana (the "Louisiana suit"). Appellants sought compensatory and punitive damages based on theories of negligence, gross negligence, willful misconduct, and products liability under principles of general maritime law or alternatively Louisiana law as applied through provisions of the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331 *et seq.* (OCSLA). The named defendants included: Pumpkin Air, Inc., United States Aviation Underwriters, Inc., the engine manufacturer AVCO Corporation (AVCO), AVCO–Lycoming Corp., AVCO's parent corporation Textron, Inc. (Textron), the helicopter manufacturer Bell Helicopter Textron, Inc. and others insignificant to the instant appeal.

On September 11, 1987, in response to appellees' motion for partial summary judgment, the district court determined that Louisiana law through the application of § 1333(a)(2)(A) of OCSLA governed the dispute. The court further held that under Louisiana law punitive damages were not recoverable against a manufacturer, and the court therefore dismissed appellants' punitive damage claims. The appellants have not appealed this dismissal nor have they subsequently argued that Louisiana law permits the recovery of punitive damages in the situation at hand.

On October 9, 1987, the appellants filed suit in the United States District Court for the District of Delaware (the "Delaware

suit") against Textron and AVCO (appellees herein) solely seeking punitive damages under Delaware, Pennsylvania, or alternatively Rhode Island law for the alleged misconduct in connection with the October 24, 1985 helicopter crash. AVCO and Textron are both Delaware corporations whose principal places of business are in Rhode Island. AVCO designed and manufactured the allegedly defective engines in Pennsylvania. Delaware, Pennsylvania, and Rhode Island allow persons to recover exemplary damages against manufacturers; Louisiana does not.

Upon learning of the concurrent proceedings in the Western District of Louisiana, the Delaware district court transferred the suit to the district court in Louisiana where the court consolidated it with appellants' remaining claim for compensatory damages. On December 8, 1987 the appellees filed a motion to dismiss appellants' claims for punitive damages arguing that the court's prior dismissal of such claims barred their relitigation. Alternatively, the appellees contended that Louisiana's choice-of-law rules required the application of Louisiana's substantive law which, as previously determined, prohibit the recovery of punitive damages against manufacturers. Agreeing that Louisiana's choice-of-law rules required an application of Louisiana substantive law, the Louisiana district court again dismissed appellants' punitive damage claims. The appellants appeal this second dismissal of their punitive damage claims.

On appeal the appellants argue that Louisiana's choice-of-law rules require application of Pennsylvania, Rhode Island, or Delaware law and that the district court's decision to apply Louisiana's substantive law was erroneous. The appellees respond that the doctrine of federal comity bars relitigation of the punitive damage claims or, in the alternative, that the district court correctly applied Louisiana substantive law in dismissing such claims. For reasons other than those relied upon by the district

court [1], we hold that the district court correctly applied Louisiana substantive law and therefore affirm the dismissal of the appellants' claims.

## Discussion

Mr. Wooton sustained injuries on Samedan's fixed platform which rested on the Outer Continental Shelf. Accidents occurring on the Shelf are governed by OCSLA which provides in part that

> To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State ... are hereby declared to be the law of the United States for the Outer Continental Shelf.... All of such applicable laws shall be administered and enforced by the appropriate officers and courts of the United States. State taxation laws shall not apply to the outer Continental Shelf.

43 U.S.C. § 1333(a)(2)(A). OCSLA thus directs this court to apply the "civil and criminal laws of [the] adjacent State," here Louisiana, when not inconsistent with federal law. The threshold issue is whether this directive requires us to apply the adjacent state's choice-of-law rules to determine the applicable substantive law or whether the statute mandates that the applicable substantive law shall be that of the adjacent state. In other words, is § 1333(a)(2)(A) itself a statutory choice-of-law provision? District courts of this circuit are split on the issue. *See Hebert v. Kerr–McGee Corp.,* 618 F.Supp. 767, 771–72 (W.D.La.1985) (holding that OCSLA "incorporates the conflict-of-law rules of the adjacent state as surrogate federal law"), followed by *McCall v. Columbia Gas Development Corp.,* 635 F.Supp. 49, 51 (W.D.La.1986), also followed by *Adams v. Drilling Measurements, Inc.,* 678 F.Supp. 148 (W.D.La.1988). *But see Greer v. Services, Equipment and Engineering, Inc.,* 593

---

**1.** "When the judgment of the district court is correct, it may be affirmed on appeal for reasons other than those asserted or relied on below." *Terrell v. University of Texas System Po-* *lice,* 792 F.2d 1360, 1362 n. 3 (5th Cir.1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987).

F.Supp. 1075, 1078 (E.D.Tex.1984) (citing *Chevron Oil Company v. Huson*, 404 U.S. 97, 102–03, 92 S.Ct. 349, 353–54, 30 L.Ed.2d 296 (1971) as holding that " 'a state's conflict-of-law rules have no relevance in an OCSLA case when a federal court is applying adjacent state law as surrogate federal law' ").

Resolution of this issue begins with a review of *Chevron Oil Company v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). In *Huson* a plaintiff, injured while working on a fixed platform located off the coast of Louisiana, brought suit against Chevron, the platform owner and operator. The issue in the case was whether the plaintiff's suit was time barred. OCSLA governed the case and required the court to look to the laws of Louisiana as surrogate federal law. Louisiana law provided that personal injury suits are prescribed by one year. In conflict of laws contexts, it had been held that Louisiana's prescriptive time limitations were not binding outside their own forum. *Id.* at 102, 92 S.Ct. at 353 (citations omitted). A panel of the Fifth Circuit had concluded that Louisiana's one-year prescription period would not apply in federal court—a foreign forum. *Huson v. Chevron Oil Co.*, 430 F.2d 27 (5th Cir.1970). The Supreme Court reversed stating that

> a federal court applying Louisiana law under § 1333(a)(2) of the Lands Act is applying it as federal law—as the law of the federal forum. Since the federal court is not, then, applying the law of *another* forum in the usual sense, ordinary conflict of laws principles have no relevance.

*Huson*, 404 U.S. at 102–03, 92 S.Ct. at 353 (emphasis in original).

This statement spawned the current split among district courts in this circuit. Courts such as the one in *Kerr–McGee* conclude that *Huson* does not displace conflicts principles, but rather requires a federal court to act as the adjacent state would. in applying the state's choice-of-law rules. By contrast, the court in *Greer* focused on the isolated phrase that "ordinary choice of law principles have no relevance" and held that § 1333(a)(2) itself preempts

the adjacent state's choice-of-law rules and calls for application of that state's substantive laws.

The Supreme Court in *Huson* explained its holding by resorting to legislative history and the policies underlying the enactment of § 1333(a)(2)(A). The court confirmed that, by incorporating the adjacent state's laws into federal law as federal law,

> Congress ... recognized the 'special relationship between the men working on these artificial islands and the adjacent shore to which they commute' favored application of state law with which these men and their attorneys would be familiar. [Citations omitted]. If Congress' goal was to provide a comprehensive and familiar body of law, it would defeat that goal to apply only certain aspects of a state personal injury remedy in federal court.

*Huson*, 404 U.S. at 103, 92 S.Ct. at 353. We find this policy instructive in resolving the issue at hand. Congress, aware of the substantial interest an adjacent state has in offshore workers commuting from its shore, sought to provide some protection to such workers by adopting laws with which the workers and their attorneys would be familiar. In many situations, this objective would be completely undermined by merely arming plaintiffs and their attorneys with familiar choice-of-law rules whose application would present the very risk sought to be avoided—casting plaintiffs and their attorneys into an unknown realm of foreign law. The legislative history as recounted by the Supreme Court in *Huson* and *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969) makes clear that, because of the "special relationship" between offshore workers and the state from which they commute, Congress intended to protect such persons not only by adopting laws which filled gaps in federal law and, by doing so, providing grounds for recovery, but also by providing access to a *familiar* law.

The Supreme Court reiterated the importance of the special relationship between the adjacent states and offshore workers in

*Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981). *Mobil* was a case questioning the jurisdiction of state courts over suits arising under OCSLA. The court held that nothing within OCSLA or its legislative history prevented concurrent state jurisdiction but they noted that *"OCSLA does supercede the normal choice-of-law rule that the forum would apply." Id.,* 101 S.Ct. at 2877 n. 8 (emphasis added). Turning to the applicable substantive law, the *Mobil* court concluded that OCSLA's language directing the application of the adjacent state's law is "an explicit choice-of-law provision." *Id.,* 101 S.Ct. at 2879. While it may be argued that this directive merely points courts to a secondary, state-imposed set of conflicts rules, we are confident the Supreme Court would not lure us into this potential hall of mirrors.

This court has not overlooked the choice-of-law directive contained within § 1333(a)(2)(A). In *Matte v. Zapata Offshore Co.,* 784 F.2d 628 (5th Cir.), *cert. denied,* 479 U.S. 872, 107 S.Ct. 247, 93 L.Ed.2d 171 (1986), a worker, injured on a platform situated off the coast of Louisiana, sued the platform owner who in turn sought indemnification from the worker's employer pursuant to the terms of a master service agreement. To circumvent Louisiana's Oilfield Indemnity Act, which would have rendered the indemnification provision of the master service agreement void and unenforceable, the agreement contained a choice-of-law clause calling for the application of general maritime law. In addition to violating Louisiana's clearly stated public policy against indemnification agreements, this court concluded that the choice-of-law provision "violates the federal policy expressed in the Lands Act, which seeks to apply the *substantive* law of the adjacent states to problems arising on the Shelf." *Id.* at 631 (emphasis added).

Based on the foregoing authorities and in furtherance of our continued recognition of the special relationship between an offshore worker and the adjacent state, we hold that § 1333(a)(2)(A) of OCSLA requires us to apply Louisiana's substantive law. Because punitive damages are not recoverable against manufacturers under Louisiana law, the appellants' claims were properly dismissed.

For the foregoing reasons, the judgment is AFFIRMED.