**WALTER OIL & GAS CORPORATION,**
**Plaintiff**

v.

**NS GROUP, INC., Newport Steel Corporation and Wilson Supply Company, Defendants.**

Civ. A. No. G–94–230.

United States District Court,
S.D. Texas,
Galveston Division.

Oct. 26, 1994.

Steven Lynn Roberts, Fulbright & Jaworski, Houston, TX, for Walter Oil and Gas Corp.

Stephen J. Butler, Thompson Hine & Flory, Cincinatti, OH, for Newport Steel Corp.

Jess Homer Hall, Jr., Liddell Sapp Zivley Hill & LaBoon, Houston, TX, for Wilson Supply Co.

### ORDER

KENT, District Judge.

Before the Court is Defendant NS Group, Inc. and Defendant Newport Steel Corporation's (hereinafter collectively referred to as "Newport") Motion to Dismiss, or in the alternative, Motion for Partial Summary Judgment under Fed.R.Civ.P. 56(c). For the reasons stated below, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. Furthermore, Defendants' Motion for Partial Summary Judgment is DENIED.

### I. Background

Plaintiff Walter Oil & Gas Corporation (hereinafter "WOGC") is a Texas corporation, with its principal place of business located in Houston, Texas. On June 16, 1993, WOGC ordered pipe for an offshore pipeline from Defendant Wilson Supply Company (hereinafter "Wilson"), a retailer and distributor of tubular goods and other steel products. Wilson, in turn, ordered the pipe from Newport and NS Group, Inc. a manufacturer of tubular goods and other steel products.

On June 16, 1993, Newport sent an order acknowledgement form to Wilson. It was a standard form issued by Newport which confirmed the price and specifications of the pipe, and which contained the terms and conditions of sale between Newport and Wilson. Newport expressly warranted to Wilson that the pipe would be "free from defects in material and workmanship and according to agreed specifications." Newport excluded all other warranties:

THERE IS NO IMPLIED WARRANTY BY THE SELLER FOR FITNESS OF PURPOSE OR OTHERWISE.

Additionally, Newport's order acknowledgement limited any liability that Newport might have for breach of its warranty to replacement of the pipe or refund of the purchase price:

Seller's liability under the warranty shall be limited to refund or replacement. In no event shall Seller's liability exceed the purchase price paid to Seller, nor shall Seller be liable for labor or consequential damages.

On July 9, 1993, Newport shipped the pipe from its mill in Newport, Kentucky, to Wilson in Houston, Texas. Wilson transferred the pipe to Pearland, Texas for coating. On August 4, 1993, the pipe was transferred from Pearland to Orange, Texas, for transit offshore. Wilson charged WOGC $123,359.40.

The contract between Wilson and WOGC limited the warranties given by Wilson to WOGC:

AS TO ALL MATERIALS SOLD HEREUNDER, WHETHER OR NOT MANUFACTURED BY WILSON, WILSON DISCLAIMS ANY AND ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE
...

The contract also restricted WOGC's remedy, in the event of a defect in the pipe, to replacement of the pipe:

... Wilson will furnish new parts without charge, FOB point of manufacture, to replace any parts which, within the War-

ranty Period, Wilson's investigation shows were defective ... WILSON SHALL NOT BE LIABLE FOR SPECIAL OR CONSEQUENTIAL DAMAGES ARISING DIRECTLY OR INDIRECTLY OUT OF OR IN CONNECTION WITH THE USE OF MATERIALS MANUFACTURED BY OR SOLD BY WILSON.

Additionally, paragraph 2 of the Wilson–WOGC contract contained the following provision:

Any materials or related parts, not manufactured by Wilson *are guaranteed only in accordance with the manufacturer's guaranty,* and then only to the extent that Wilson agrees to present Customer's claim to the manufacturer for adjustment. (emphasis added).

Plaintiff did not allege any contact whatsoever between Newport and WOGC concerning the purchase and sale of the pipe. However, Plaintiff asserts that at the time it purchased the pipe from Wilson, it did not know from what company Wilson purchased the pipe, nor what company manufactured the pipe. There was no written material supplied by Newport to accompany the pipe, and there was no written material on the pipe itself that would serve to identify Newport as the manufacturer. Furthermore, there was no direct disclaimer of any warranty or limitation of remedies communicated by Newport to WOGC. After the pipe was delivered, WOGC arranged for OPI International, Inc. (hereinafter "OPI") to install the pipe as an underwater pipeline, offshore, in the Gulf of Mexico. Upon completion of the pipeline installation, a hydrostat pressure test was conducted by OPI. During the test, the pipeline lost pressure. Divers with Cal Dive International (hereinafter "Cal Dive") inspected the pipeline, and found leakage within a section of the pipe. This section of pipe was then removed and replaced, and the pipe was retested. Again, the pipeline lost pressure, and Cal Dive discovered another leakage within a different section of the pipe. This second section of pipe was also removed. Testing of the two sections of removed pipe revealed that the welds of the seams of the pipe were defective. Plaintiff alleges that neither it, OPI, nor Cal Dive caused damage to the pipe. Rather, Plaintiff contends that the defect in the welds had its origin in the manufacturing process and subsequent testing procedures at Newport's facility in Newport Kentucky.

Soon after discovering the defect in the pipe, WOGC made demand on Newport to rectify the situation, but Newport refused. As a result, WOGC purchased pipe of an identical grade from another manufacturer. Plaintiff WOGC alleges that it has sustained substantial expense in replacing the pipeline. Plaintiff also alleges lost profits because of the delay caused by the necessity of replacing the pipeline.

Plaintiff has filed a three-count Complaint under the Outer Continental Shelf Lands Act. In Count One, WOGC asserts a claim against Wilson and Newport under the Uniform Commercial Code (UCC), alleging that they breached express and implied warranties regarding the quality of the pipe. Count Two alleges that Wilson and Newport Steel breached contracts with WOGC "to supply pipe of a particular grade and quality ..." Finally, WOGC asserts a negligence claim against Newport based on its manufacturing and testing of the pipe.

Subsequently, Defendants Newport Steel Corporation and NS Group, Inc., filed the present Motion to Dismiss these aforementioned claims. Plaintiff, in its Response, has conceded that it has no cause of action against Newport for breach of express warranty, breach of contract, or negligence. These claims are therefore DISMISSED WITH PREJUDICE.

Therefore, the sole cause of action remaining for this Court's consideration is Plaintiff's claim against Newport for breach of implied warranty with regard to the quality of the pipe. It is in regard to that sole claim that the Court considers Defendants' Motion to Dismiss or for Partial Summary Judgment.

## II.  Standard of Review

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is material if its resolution in favor of one party

might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists if there is a genuine issue for trial that must be decided by the trier of fact. In other words, summary judgment should not be granted if the evidence indicates that a reasonable fact-finder could find in favor of the non-moving party. *Id.* See also *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In ruling on a Motion for Summary Judgment, the court must accept the evidence of the non-moving party and draw all justifiable inferences in his favor. Credibility determinations, weighing of the evidence, and the drawing of reasonable inferences are left to the trier of fact. *Anderson v. Liberty Lobby, supra,* 477 U.S. at 255, 106 S.Ct. at 2513.

Under Fed.R.Civ.P. 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once this burden is met, the burden shifts to the non-moving party to establish the existence of a genuine issue for trial. *Matsushita, supra,* 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Leonard v. Dixie Well Serv. & Supply, Inc.,* 828 F.2d 291, 294 (5th Cir.1987). Where the moving party has met its Rule 56(c) burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts ... [T]he non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.' Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita, supra,* 475 U.S. at 596–97, 106 S.Ct. at 1361 (quoting Fed. R.Civ.P. 56(e)) (emphasis in original).

As mentioned above, this action was brought pursuant to the Outer Continental Shelf Lands Act (hereinafter "OCSLA"), 43 U.S.C. §§ 1331, 1333. Section 1333 of OCSLA provides in pertinent part:

(1) The Constitution and laws and civil and political jurisdiction of the United States are hereby extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State: Provided, however, that mineral leases on the outer Continental Shelf shall be maintained or issued only under the provisions of this subchapter.

(2)(A) To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State, now in effect or hereafter adopted, amended, or repealed are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf ...

Two issues are presented for this Court's examination. First, under OCSLA, what law should be applied: Federal common law or state law (and if state law, the law of which state)? Second, assuming a choice of law has been made, does the Plaintiff state a claim for a breach of implied warranty under that law?

### III. Choice of Law

#### A. Federal or State Law?

Defendants urge that § 1333(a)(2)(A) of OCSLA provides that state law applies to the extent it is consistent with Federal law. Federal law, according to the Defendant necessarily *includes* Federal common law. Plaintiff, on the other hand, maintains that

§ 1333(a)(2)(A) provides that State law applies so long as it is consistent with Federal statutory and regulatory law, exclusively. The Plaintiff argues that under § 1333(a)(2)(A), the consistency or inconsistency of Federal common law is irrelevant to the application of state law.

The principal case in determining what law applies under OCSLA is *Rodrigue v. AETNA*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969). In ascertaining what law applies, *Rodrigue* instructed lower courts to apply the law of the adjacent state "to the extent that these [state laws] are applicable and not inconsistent with other Federal laws." *Id.* at 357, 89 S.Ct. at 1838.

This issue of whether state law is inconsistent with Federal law is critical. At least one Federal Court has held that *U.S. v. Seckinger*, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970), established a Federal common law which preempts the application of state law. *Doucet v. Gulf Oil Co.* (No. 82–4818) (E.D.La. May 16, 1984). In that case, the suit involved an indemnification clause which allowed a party to indemnify itself against its own negligence. Under Louisiana law, such a clause would have been invalid. Based on the authority of *U.S. v. Seckinger, supra,* the Court held that Federal common law allowed this type of indemnification. Under *Rodrigue* the Court held the Louisiana statute was inconsistent with Federal law and had to give way.

This Court respectfully interprets *Seckinger* differently. *Seckinger* involved a Federal construction contract. The contract concerned a government project and was entered into by the government pursuant to the authority of a governmental statute. The *Seckinger* contract was purely federal in nature, and it is doubtful to this Court that *Seckinger* can be read to fashion a general Federal common law rule for the interpretation of purely private contracts. There is ample authority within the Fifth Circuit to support this Court's view. *Matte v. Zapata Offshore Co.,* 784 F.2d 628, 630 (5th Cir.

1986), *cert. denied,* 479 U.S. 872, 107 S.Ct. 247, 93 L.Ed.2d 171 (1986); *Greer v. Services, Equipment and Engineering, Inc. v. Marine Offshore Catering Company Inc.,* 593 F.Supp. 1075, 1077 (E.D.Tex.1984); *Hebert v. Kerr–McGee Corporation et al.,* 618 F.Supp. 767, 768 (W.D.La.1985). After a careful reading of § 1333(a)(2)(A), as well as relevant Federal case law interpreting this statute, this Court has determined that the phrase "other Federal laws" in § 1333(a)(2)(A) refers not to Federal common law, but rather to Federal statutory law. *See Hebert, supra* at 768; *Frazier v. Columbia Gas Development Corp.,* 596 F.Supp. 429, 430–31 (W.D.La.1984). This Court understands *Rodrigue* to indicate that state law will almost always apply under OCSLA. *See Greer, supra,* at 1077; *Chevron Oil Company v. Huson,* 404 U.S. 97, 103–04, 92 S.Ct. 349, 353–54, 30 L.Ed.2d 296 (1971).

## B.  Texas or Kentucky State Law?

Having decided that state law should apply, it becomes necessary to determine which state's substantive law governs. *Rodrigue* mandates that the law of the adjacent state, in this case Texas, applies. The Defendants have made an argument that in applying Texas law, this Court should apply Texas' conflicts of law rules for contracts. Defendants argue that Texas' conflicts rules would require that Kentucky's substantive law should apply because the contract has little connection with Texas.[1] However, while enticing on common sense grounds, this argument must legally fail. In *Chevron Oil Company v. Huson, supra,* the Supreme Court held that a State's conflict of law rules have *no* relevance in an OCSLA case when a Federal court is applying adjacent state law as surrogate Federal law. *See Chevron,* 404 U.S. at 102–02, 92 S.Ct. at 353–54. *Chevron* noted that a Federal court applying state law under OCSLA was "not ... applying the state law of another forum in the usual sense," *Id.,* but making the state law become "federal law federally enforced." *Id.*

1.  The Court believes this argument has some merit. Newport's only contract in this transaction was negotiated and made in Kentucky; Newport performed its obligations under the contract in Kentucky; and Newport has is domicile, residence, place of incorporation and place of business in Kentucky.

■ Since Texas is the adjacent state, Texas substantive law must be applied as surrogate Federal law. *See also Wooton v. Pumpkin Air, Inc.,* 869 F.2d 848 (5th Cir. 1989).

Defendants argue that the rule in *Wooton* applies only in the context of personal injury actions due to the "special relationship" between offshore workers and the state from which they commute. *Wooton, supra* at 851. However, Defendants are mistaken in their attempt to limit the application of *Wooton.* In *Union Texas Petroleum Corp. v. PLT Engineering,* 895 F.2d 1043, 1050 (5th Cir. 1990), *cert. denied,* 498 U.S. 848, 111 S.Ct. 136, 112 L.Ed.2d 103 (1990), a commercial contract dispute involving a subsea gathering line on the outer Continental Shelf, the Fifth Circuit cited and applied the principle established in *Wooton.* Therefore, this Court finds that Texas substantive law must be applied as surrogate Federal law.

## IV. Does the Plaintiff State a Claim for Breach of Implied Warranty under Texas Substantive Law?

■ Defendants assert that there is no Texas authority which addresses the precise question of whether a commercial buyer may maintain an implied warranty action for purely economic losses against a remote manufacturer with whom the buyer is not in privity. This Court is not persuaded by Defendants' argument. In *Nobility Homes of Texas, Inc. v. Shivers,* 557 S.W.2d 77 (Tex. 1977), the Texas Supreme Court ruled that a consumer has a viable breach of implied warranty action against a manufacturer regardless of the lack of privity. Defendants contend that *Nobility Homes* applies only to ordinary consumers and not to commercial consumers like the Plaintiff. This Court is not persuaded by this proposition. In *Clark v. DeLaval Separator Corp.,* 639 F.2d 1320, 1322 (5th Cir.1981), the Court applied *Nobility Homes* to a case involving a breach of implied warranty claim by a commercial buyer against a manufacturer and held that no privity was necessary. Furthermore, *Nobility Homes* contains an extensive analysis of the pertinent sections of the Texas Uniform Commercial Code, Tex.Bus. & Comm.Code

Ann. (1967). The relevant sections of the Code are those pertaining to the implied warranty of merchantability (§ 2.314) and the implied warranty of fitness for a particular purpose (§ 2.315). Section 2.314 explains that a seller impliedly warrants that goods are merchantable if they are, "fit for the ordinary purposes for which such goods are used...." Tex.Bus. & Comm.Code Ann. § 2.314(b)(3) (1967). After careful analysis of § 2.314(b)(3), the Texas Supreme Court in *Nobility Homes* held "... that a manufacturer can be responsible, without regard to privity, for the economic loss which results from his breach of the Uniform Commercial Code's implied warranty of merchantability." *Nobility Homes, supra,* at 81. This language does not distinguish between a private consumer and a commercial consumer. In fact, the only section in Article II of the Code that relates to any type of consumer is the definition of "Buyer" in § 2.103(a)(1), which states: " 'Buyer' means a person who buys or contracts to buy goods." This Court finds that Plaintiff WOGC is a "Buyer" within this definition, and therefore WOGC may avail itself of the protections afforded by § 2.314. Thus, this Court finds that the Defendants owed the Plaintiff an implied warranty of merchantability.

■ Defendants further argue that even if an implied warranty existed, Defendants have effectively disclaimed that warranty, or in the alternative have limited Plaintiff's remedies to a refund of the purchase price of the pipe. In support thereof, Defendants assert that the warranty disclaimer by Defendant Wilson, the seller of the pipe, is sufficient to disclaim any implied warranty by Defendants Newport, simply because Wilson's disclaimer mentioned the manufacturer's warranty, citing *Larsen Leasing, Inc. v. S.M.E. Leasing,* 1988 U.S.Dist. LEXIS 17963 (W.D.Mich. Jan. 25, 1988). This Court is unpersuaded by Defendants' reference to this unreported decision which applies Michigan law. Furthermore, the Court in that case relied on a construction of § 2–318 of the Uniform Commercial Code which provides, under Michigan law, that a disclaimer by the manufacturer in a contract of sale between the manufacturer and the wholesaler or retailer is effective as against the ultimate user, regardless

of whether the ultimate user was informed of the disclaimer. However, Texas has not adopted § 2–318, and therefore, that is not the law of Texas.

█ Rather, this Court relies upon *Clark v. DeLaval Separator Corp., supra,* 639 F.2d 1320, 1323–24 (5th Cir.1981). In that case, the Fifth Circuit held that a retailer's disclaimer is not effective to disclaim warranties by the manufacturer unless the manufacturer's disclaimer is included in the materials supplied by the manufacturer to the consumer, or the manufacturer is joined as a disclaiming seller in the contract between the retailer and the consumer, or is "an expressed third-party beneficiary of a disclaimer in the retailer's contract that explicitly disclaims any implied warranties by the manufacturer." *Id.* *Clark* did not hold that the manufacturer's warranty is disclaimed merely because the manufacturer was mentioned in the retailer's disclaimer. The retailer's disclaimer must *explicitly* disclaim any implied warranties by the manufacturer. Wilson's disclaimer did not *explicitly* disclaim any implied warranties by Newport. Instead, the disclaimer simply stated that the goods were "guaranteed only in accordance with the manufacturer's guarantee." Furthermore, the information printed on the pipe itself said nothing at all about warranty or damage disclaimers. Therefore, this Court finds that Newport failed to effectively disclaim or in any way limit its implied warranty of merchantability.

Finally, the Court finds that the evidence indicates that a reasonable fact-finder could find in favor of the non-moving party, here Plaintiff WOGC. Therefore, Summary Judgment is also factually inappropriate in this case.

### V. Conclusion

For the reasons stated above, Plaintiff's claims for breach of express warranty, breach of contract, and negligence are **DISMISSED WITH PREJUDICE.** Defendants' Motion to Dismiss, or for Partial Summary Judgment as regards Plaintiff's claim of breach of implied warranty of merchantability is **HEREBY DENIED.** With regard to the issues of breach of express warranty, breach of contract, and negligence, **THIS IS A FINAL JUDGMENT.** The parties are **HEREBY ORDERED** to file nothing further on these issues before this Court, particularly including motions to reconsider and the like. The parties are invited to submit the matter to the United States Court of Appeals for the Fifth Circuit, as appropriate, in due course. The parties are ordered to bear their own costs incurred herein to date. The Plaintiff's claim of breach of implied warranty of merchantability remains pending, subject to docket control deadlines now in effect.

IT IS SO ORDERED.