UNITED STATES of America,
Plaintiff-Appellee,

v.

Jurgis JOUDIS, Defendant.

In re the Contempt Petition Mecislovas
MIKUTAITIS, Deponent-Appellant.

No. 86–1418.

United States Court of Appeals,
Seventh Circuit.

Argued May 13, 1986.

Decided Sept. 2, 1986.

Rehearing and Rehearing En Banc
Denied Oct. 3, 1986.

Ronnie L. Edelman, Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Charles W. Nixon, Chicago, Ill., for defendant.

Before WOOD, COFFEY and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

The appellant, Mecislovas Mikutaitis, appeals an order of the district court finding him in contempt under 28 U.S.C. § 1826 for refusing to be deposed despite a grant of immunity pursuant to 18 U.S.C. § 6002. Mikutaitis, who is of Lithuanian descent, asserted his Fifth Amendment right against self-incrimination because of the fear that the government's Office of Special Investigations (OSI) would, as it is currently attempting to do with Jurgis Joudis, seek his denaturalization and eventual deportation for his alleged cooperation with the occupying Nazi forces during World War II and the concealment of this cooperation in order to enter the United States following the war. He claims that the information requested by the OSI, if obtained by Soviet authorities, could result in his prosecution should the United States successfully seek his deportation. The district judge in the Middle District of Florida who was assigned the denaturalization case against Joudis attempted to shield Mikutaitis through a grant of immunity and an order that the deposition be put under seal. Mikutaitis considered these protections inadequate and the district court here in Illinois found him in contempt.

We find that the protections offered by the order of the Florida court were sufficient and thus Mikutaitis has failed to establish "a real and substantial fear of foreign prosecution." Therefore, we affirm the district court.

## I.

Jurgis Joudis was allegedly a member of the Lithuanian Auxiliary Police between 1941 and 1944. This group of Lithuanian citizens assisted the occupying Nazi forces in the persecution and slaughter of Jews and other groups targeted by the Third Reich. The OSI is currently seeking to strip Joudis of his citizenship on the grounds that he misrepresented and concealed his wartime activities. As part of the discovery in the denaturalization proceedings being conducted in the United States District Court for the Middle District of Florida the government sought to depose Mecislavas Mikutaitis, a resident of Chicago and a wartime citizen of Lithuania. The attorneys for the government had reason to believe that Mikutaitis served in the Auxiliary Police and was familiar with Joudis's activities.

In 1983 the government attempted to depose Mr. Mikutaitis but he refused to answer any questions that went beyond his identity, asserting his rights under the Fifth Amendment. On October 23, 1985 the OSI obtained from the Florida court an order pursuant to 18 U.S.C. § 6002 compelling Mikutaitis to provide the requested information. The order also provided that the testimony and ancillary information be kept under seal. One week later the Clerk of the Court for the Northern District of Illinois issued a deposition subpoena which was served upon Mikutaitis. Counsel for Joudis was also notified.

On November 21, 1985 the government once again attempted to depose Mikutaitis but, notwithstanding the grant of immunity and the sealing order, Mikutaitis continued to refuse to answer based on the privilege against self-incrimination. Immediately thereafter a Motion for Rule to Show Cause why the deponent should not be held in contempt under the Recalcitrant Witness Statute, 28 U.S.C. § 1826, was filed in the district court.

Despite repeated government motions, an evidentiary hearing was not held until March 6 and 7, 1986, a month and one-half after discovery had been cut-off and the parties ordered to stand ready for trial in the denaturalization action in Florida. At the evidentiary hearing Mikutaitis called two witnesses: a professor from the University of Illinois, who testified about the Soviet treatment of alleged war criminals, and the government attorney, who spoke about OSI's basis for wanting to depose Mikutaitis and the nature of information sought. The deponent also attempted to introduce news items and bulletins published by an organization known as Americans for Due Process. These publications summarized published accounts of existing

prosecutions of immigrants from the Baltic states who are alleged to have acted in complicity with the occupying Nazi forces. The district judge denied the motion to admit this document on the grounds that it was unreliable.

On March 11, 1986 the district court held that although Mikutaitis had a realistic fear of foreign prosecution, this fear was mooted by the Florida court's sealing order. Despite this finding the district court remained reluctant to incarcerate the seventy-year-old Mikutaitis and encouraged the parties to negotiate an alternative resolution. The government offered to refrain from taking any action to deport him if Mikutaitis agreed to testify and renounce his United States citizenship. This offer was refused and Mikutaitis was subsequently found to be in contempt and ordered to report to the United States Marshal to begin his incarceration. Mikutaitis has not served any time in custody; he is currently free on bail pending the outcome of this appeal.

On appeal Mikutaitis raises a number of issues, the vast majority of which are spurious [1] and serve only to detract from the central question of this case: is Mikutaitis sufficiently protected by the orders of the Florida court such that his right, should this right exist, to invoke the protections of the Fifth Amendment based on the fear of foreign prosecution, has been overcome.

## II.

As an initial matter the existence of the Fifth Amendment right asserted by Mikutaitis is questionable. In a recent decision involving the family of former Philippine president Ferdinand Marcos, the Fourth Circuit ruled that the protections of the right against self-incrimination did not extend to foreign prosecution. *United States v. (Under Seal)*, 794 F.2d 920 (4th Cir. 1986). The Supreme Court stayed the order of contempt pending review by the Court. In so doing Chief Justice Burger concluded that "there is a 'fair prospect' that a majority of this court will decide the issue in favor of the applicants [the Aranetas]. *Murphy v. Waterfront Commission*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), contains dictum which, carried to its logical conclusion, would support such an outcome." *Araneta v. United States*, —— U.S. ——, 107 S.Ct. 1, 92 L.Ed.2d —— (1986).

There is no need to reach this difficult issue in the present case because Mikutaitis's real and substantial fear of Soviet prosecution did not survive the attempt by the district court in Florida to protect the

---

1. For example, Mikutaitis argues that the district court no longer has jurisdiction because the court in Florida cut-off discovery before the court in Illinois ruled on the contempt motion. The government sought to depose Mikutaitis three months prior to the close of discovery. If his refusal to testify was wrongful and thus justified contempt, the obligation to cooperate lasts until the end of Joudis's trial, not until the judge puts an end to discovery. Mikutaitis is alleged to have flaunted a subpoena of the district court in Chicago, a subpoena issued at a time when a discovery deposition was proper. This matter now has moved to the question of sanctions for ignoring a court order, which is a different issue than the question of OSI's continuing ability to depose Mikutaitis. The district court has a continuing obligation for as long as the Joudis case is pending to protect the court's integrity by imposing sanctions on the recalcitrant witness.

Mikutaitis also goes as far as to claim that the district court in Illinois can never have jurisdiction over this matter because the denatu-

ralization statute, 8 U.S.C. § 1421(a), vests exclusive jurisdiction over the Joudis case in the Middle District of Florida. Under this argument any attempt by any other federal court to subpoena a witness outside of the jurisdiction of the Florida court would be an impermissible extension of federal jurisdiction. This argument evidences a misconception over the nature of federal jurisdiction. In issuing a subpoena the Illinois district court is exercising jurisdiction not over Jurgis Joudis, but over Mikutaitis. The jurisdiction to issue the subpoena, while triggered by the suit against Joudis, derives from a source independent of that used to confer jurisdiction in the underlying denaturalization suit.

Finally, Mikutaitis argues that the deposition was improper because Joudis's attorneys were not present despite receiving notice. Obviously a litigant cannot defeat every deposition of a third party by simply failing to show up. Joudis's counsel received proper notice and that is all that is required.

deponent. "It is well established that the privilege protects against real dangers, not remote speculative possibilities." *Zicarelli v. New Jersey State Commission of Investigations,* 406 U.S. 472, 478, 92 S.Ct. 1670, 1674–75, 32 L.Ed.2d 234 (1972). In evaluating whether a "real and substantial" danger exists the court should

> focus upon such questions as whether there is an existing or potential foreign prosecution of him; what foreign charges could be filed against him; whether prosecution of them would be initiated or furthered by his testimony; whether any such charges would entitle the foreign jurisdiction to have him extradited from the United States; and whether there is a likelihood that his testimony given here would be disclosed to the foreign government.

*United States v. Flanagan,* 691 F.2d 116, 121 (2d Cir.1982). *See also In re Grand Jury Proceedings (Chevrier),* 748 F.2d 100, 103 (2d Cir.1984); *In re Grand Jury Proceedings (Nigro),* 705 F.2d 1224, 1227–28 (10th Cir.1982), *cert. denied,* 461 U.S. 927, 103 S.Ct. 2087, 77 L.Ed.2d 298 (1983).

When we analyze this case under the factors elucidated by the Second Circuit, the precise nature of Mikutaitis's claim is readily apparent. Unlike the members of the Marcos family in *Araneta* the deponent here does not face an existing prosecution in his country of origin nor does the government have an extradition treaty with the Soviet Union. Furthermore, while Mikutaitis presented evidence that the Soviets routinely provide information to the OSI, he has not claimed, and the record does not indicate, that the OSI shares the information it obtains in its denaturalization cases with Soviet authorities. *Cf. United States v. (Under Seal),* 794 F.2d at 925 (F.R. Crim.P. 6(e) inadequate to protect grand jury testimony where government subject

to diplomatic pressures to divulge the testimony to a foreign power).

■ Under these circumstances Mikutaitis's sincere fear is that on the basis of his testimony he will be denaturalized and deported, and that his testimony will somehow become public—thus allowing the Soviets to use it in a war crimes prosecution. Denaturalization and deportation are civil proceedings, *Fedorenko v. United States,* 449 U.S. 490, 516, 101 S.Ct. 737, 752, 66 L.Ed.2d 686 (1982); *United States v. Kairys,* 782 F.2d 1374, 1382 (7th Cir.1986), and cannot serve as the basis for his assertion of the privilege.[2] *See generally, Ryan v. Commissioner of Internal Revenue,* 568 F.2d 531, 541–42 (7th Cir.1977). Thus the potential for Mikutaitis's testimony serving as the basis for his denaturalization and deportation is relevant only to the extent it makes foreign prosecution utilizing that testimony more likely. All of this then boils down to the question of the likelihood that this information will be disseminated to the Soviet Union. This in turn isolates the only serious issue in this case: namely, whether the sealing order is adequate to protect Mikutaitis from Soviet acquisition of his testimony and thus override his Fifth Amendment claim.

Mikutaitis posits a number of ways in which his testimony could be obtained by the Soviets if it is used at the trial of Joudis: (1) Soviet agents could be present in the courtroom; (2) the government, notwithstanding any sealing order, could attempt, with the permission of the court, to read parts of the deposition into the record; (3) Joudis could be persuaded by Soviet authorities to divulge what he learned about Mikutaitis's activities through the course of his trial. The sealing order, ac-

---

**2.** Mikutaitis claims that the sealing order is inadequate because it does not protect him from the forfeiture of his social security benefits should he be denaturalized. This is just another potential *domestic* civil consequence of his testimony and thus does not provide a basis for the assertion of the privilege. *See generally, Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653,

32 L.Ed.2d 212 (1972) (for purposes of a domestic case, the scope of immunity under section 6002 is coextensive with the Fifth Amendment). The sealing order, thus, is of no moment in assessing the ability of Mikutaitis to assert his right because of domestic consequences. The grant of immunity alone is sufficient to protect his Fifth Amendment right in that respect.

cording to Mikutaitis, fails to address these dangers because it is crafted in general terms and because the term "seal" has no statutory definition that adds substance to the order.

Unlike other cases dealing with sealing orders in this context, this case deals with a deposition rather than grand jury testimony. In the grand jury cases the courts have often suggested additional safeguards that should be included in a sealing order where there is a threat of foreign prosecution. *See, e.g., Chevrier,* 748 F.2d at 104. While one would hope that the district court in Florida would apply a level of protection in this setting equivalent to that invoked by other courts, this court lacks the jurisdiction to modify the Florida court's sealing order. That order must be evaluated as it now stands. It cannot be said that the "sealing of a document" is a term that has acquired no meaning over time. Clearly, no one other than the parties and the court will have access to the deposition and no one will be able to reveal the contents of the testimony without permission of the court. It is possible to do more by, for example, requiring that the courtroom be cleared when the government attempts, as it claims it will, to introduce portions of the deposition into evidence.

However marginally helpful such additional protections would be, the Florida district court cannot be faulted for failing to take these measures. In most cases of fear of foreign prosecution a grant of immunity pursuant to 18 U.S.C. § 6002 and a protective order would be sufficient. Where, as here, the deponent asserts that he needs additional safeguards because of the special circumstances of his situation (here those circumstances revolve around the alleged tactics of the foreign power involved), the deponent bears some burden to communicate this information to the court. The district court in this situation is doing what is necessary to accommodate the alleged Fifth Amendment right asserted. It would defeat the efficacy of this process to allow the person who is to testify to claim that the order failed to protect his rights when he failed to provide the appropriate district court with specific objections that would allow any inadequacies to be corrected by additional protections. This is precisely what Mikutaitis did. There is no evidence in the record that he ever attempted to seek a clarification of the scope of the sealing order or that he ever attempted to obtain additional safeguards from the Florida court. Under these circumstances it would be imprudent for this court to reverse the finding of contempt based on the fact that more could have been done to insulate Mikutaitis from the Soviet use of his testimony.

In essence Mikutaitis's position on appeal must be interpreted consistently with his tactics below. Thus, the most accurate description of Mikutaitis's approach is that a sealing order can never adequately protect his alleged Fifth Amendment right. The problem with this position is that it rests on speculation as to the lengths Soviet officials will go in order to obtain the information contained in the deposition. Mikutaitis has presented no evidence that establishes that the district court lacks the ability to effectively limit access to the deposition or that one of the parties, namely the OSI, is under some form of pressure to ignore the court's order and share the information with the Soviets. While the "parade of horribles" presented by Mikutaitis concerning the possible effect of his testimony may in fact turn out to be true, he has failed to establish any *factual basis* for questioning the efficacy of the accommodation of his rights provided by the district court. A real and substantial fear of foreign prosecution cannot be based on pure supposition concerning the ability of the foreign power to overcome a court order designed to prevent the foreign power from obtaining the information.

"Among the necessary and most important of the powers of the ... Federal Government to assure the effective functioning of government in an ordered society is the broad power to compel residents to testify in court." *Murphy,* 378 U.S. at 93–94, 84 S.Ct. at 1611 (White, J., concurring). *See also Blair v. United States,* 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979 (1920).

In balancing this societal need with the important individual liberty interest inherent in the Fifth Amendment the courts must "seek a rational accommodation." *Kastigar v. United States*, 406 U.S. 441, 446, 92 S.Ct. 1653, 1657, 32 L.Ed.2d 212 (1972). Given the evidence adduced by Mikutaitis at his contempt hearing and his failure to seek additional safeguards from the district court in Florida, we find the court adequately accommodated Mikutaitis's Fifth Amendment rights (to the extent such rights exist) through the protective order.

### III.

■ As a final matter Mikutaitis challenges the district court's decision to deny the admission of the news summaries prepared by Americans for Due Process. Summaries of other published accounts are double hearsay and no basis for finding that these accounts fall into some exception to the hearsay rule has been suggested. The district court's determination that these statements are unreliable thus will not be disturbed.

### IV.

For the reasons above the judgment of the district court is affirmed.

AFFIRMED.