**ASBESTOS REMOVAL CORPORATION OF AMERICA, INC., Plaintiff,**

v.

**GUARANTY NATIONAL INSURANCE CO., The Aetna Casualty and Surety Co., Industrial Indemnity Co., and Insurance Co. of North America, Defendants.**

**Civ. A. No. 93–1052–A.**

United States District Court, E.D. Virginia, Alexandria Division.

Jan. 26, 1994.

---

Louis Fireison, Louis Fireison & Associates, P.A., Bethesda, MD, for plaintiff.

Randolph Harrison Watts, Alexandria, VA, for Guaranty Nat. Ins. Co.

Michael Joseph Barta, Miller, Cassidy, Larroca And Lewin, Washington, DC, for The Aetna Cas. and Sur. Co.

Randell Hunt Norton, Thompson, O'Donnell, Markham, Norton & Hannon, Washington, DC, for Industrial Indem. Co.

Kathryn D. Kirmayer, Crowell And Moring, Washington, DC, for Insurance Co. of North America.

## MEMORANDUM OPINION

HILTON, District Judge.

This matter came before the Court on cross-motions for Summary Judgment. ARCA is the successor in name of Wrecking Corporation of America, Virginia, Inc., a Virginia corporation. In the 1970's and 1980's, ARCA obtained CGL policies to cover its various operations. The four defendants are carriers who issued CGL policies to ARCA during the relevant time period; INA from March 1, 1979 to August 27, 1979, Guaranty National from May 1, 1979 to May 1, 1980, Aetna from October 1980 to March 1982, and Industrial Indemnity from March 1984 to March 1985.

All of the policies contained the so-called "pollution exclusion" provisions that were industry standards at the time. The pollution exclusion provisions provide that:

> This insurance does not apply to bodily injury or property damage arising out of the discharge, dispersal, release of or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, release or escape is sudden and accidental.

While ARCA's principal place of business was in Virginia, it did business in various locations around the country, and its insurance agent was located in St. Louis, Missouri. As such, when ARCA purchased insurance on the open markets, the policy was generally delivered to the agent in Missouri. The Guaranty National policy was delivered to an agent in New York.

In early 1993, ARCA was sued for damages resulting from an ordered environmental cleanup in an action currently pending in West Virginia. Electrical equipment at the West Virginia site contained hazardous substances that were "discharged, spilled and leaked" at the site. ARCA arranged for the disposal or treatment of transformers or other electrical equipment containing hazardous substances, including PCB's and metals. The EPA ordered a cleanup of the site in 1991, and Ford Motor Company, NCR Corporation, and Potomac Electric Power Company, plaintiffs in the West Virginia suit, complied. After allegedly spending $3 million for the cleanup, the plaintiffs in the West Virginia action sued ARCA and approximately 40 other defendants for contribution under CERCLA. When ARCA was served with the Complaint in the West Virginia suit, it forwarded the claim to its CGL carriers, who denied responsibility to defend or indemnify. As such, ARCA brought this action for a judgment that the carriers have such a duty.

■ As an initial matter, it must be determined which state's law applies. As this is a diversity action, this Court must apply the choice of law principles of Virginia, the jurisdiction in which this Court sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Plaintiff argues that because the disputed question in this case is whether the insurers have an obligation to defend the plaintiff in West Virginia, that West Virginia law applies. This argument, however, is erroneous. The Virginia choice of law rules for the interpretation of insurance contracts is that those contracts are governed by the law of the

state in which the insurance contract is made. *Rossman v. State Farm Mut. Auto Ins. Co.*, 832 F.2d 282, 287 (4th Cir.1987). The insurance contracts at issue in this case were made in Missouri and New York, so the laws of those states apply. Plaintiff cites various cases in which Virginia courts have looked to the place of performance as the source of governing law. However, these are not cases involving the interpretation of insurance contracts, for which Virginia long ago established, and recently·reaffirmed, a different rule. As recently explained by the Virginia Supreme Court, the "place of contracting" rule governs the choice of law in insurance cases: "[T]he law of the place where an insurance contract is written and delivered controls issues as to its coverage." *Buchanan v. Doe*, 246 Va. 67, 431 S.E.2d 289, 291 (1993).

In the alternative, plaintiff seeks to invoke the doctrine of renvoi in order to show that West Virginia law applies in this case. Under that doctrine, a court looking to the law of another forum would look not only to the substantive law of that forum, but also to its choice of law rules; then it would apply the choice of law rules of that state and determine where those rules are directed. No reported Virginia case has applied this doctrine, and plaintiff has cited no authority for the proposition that the doctrine is recognized in Virginia. Rather, it is clear from the cases cited above that the Virginia courts have always looked to the substantive law of the place of contracting in order to interpret an insurance contract.

The INA policy states that it "does not apply to bodily injury or property damage arising out of the discharge, dispersal, release or escape of . . . waste materials or other irritants, contaminants or pollutants. . . ." The underlying Complaint demonstrates that what is at issue here is the "discharge, dispersal, release or escape" of "contaminants or pollutants" at the site. The Complaint describes a long-term, ongoing, and deliberate discharge of contaminants and disposal of transformers. The claim for which ARCA seeks coverage thus falls squarely within the scope of the pollution exclusion in the INA policy.

The only exclusion to the express exclusion of pollution claims under the policy—the exception for pollution that happens both suddenly and accidentally—has no application to this case. To bring itself within the exception to the policy's pollution exclusion, ARCA would have to prove that the discharge of pollutants giving rise to the EPA order were both "sudden" and "accidental." The undisputed facts demonstrate that the pollution at issue here was neither "sudden" nor "accidental." Whatever pollution exists at the site grew out of the deliberate and continuous disposal, storage, and handling of toxic materials at the site over a period of a number of years. Indeed, both parties agree that the pollution in this case lasted at least six years.

In cases such as this, where the allegations underlying the Complaint against a policyholder refer to pollution occurring over an extended period of time, the courts have consistently held that the pollution exclusion bars coverage for pollution-related liabilities, notwithstanding an occasional, accidental discharge. *See Lumbermens Mut. Cas. Co. v. Belleville Indus., Inc.*, 938 F.2d 1423, 1427–29 (1st Cir.1991) (denying coverage for continuous, long-term discharge of pollutants, despite isolated instances in which rainstorm and fire had caused specific discharges of pollutants).

From its usage in the insurance contracts at issue in this case, the meaning of "sudden and accidental" pollution is clear. Indeed, the facts in this case reflect that the pollution was neither "sudden" nor "accidental." Therefore, the pollution exclusion of the insurance contracts applies. The pollution in this case came from a deliberate discharge of contaminants that occurred over many years. This Court defines "sudden" pollution to mean pollution which occurs abruptly, instantly, or within a very short period of time. *See K.J. Quinn & Co., Inc. v. Continental Cas.*, 806 F.Supp. 1037, 1044 (D.N.H.1992) (holding that events cannot be sudden "when they occur in the course of a third party's regular operations and are part of a routine that persists over a period of months or years."); *Indus. Indem. Ins. Co. v. Crown Auto Dealerships, Inc.*, 731 F.Supp. 1517,

1521–22 (M.D.Fla.1990) (explaining that pollution that is normal result of routine business operations is "clearly cumulative" and cannot be characterized as "sudden and accidental").

Grants of summary judgment motions are warranted if the pleadings, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact and that the moving will prevail as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). There is a genuine issue as to a material fact only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

There being no genuine issue as to any material fact in this case, it is appropriate for Summary Judgment. Due to the fact that the pollution at issue here was neither "sudden" nor "accidental," the pollution exclusion of the insurance policies applies. Defendants are entitled to Summary Judgment because they have no duty under the insurance contracts to defend plaintiff in the West Virginia action.

An appropriate Order shall issue.

### ORDER

For reasons stated in the accompanying Memorandum Opinion and from the bench, it is hereby

ORDERED that defendants' Motion for Summary Judgment is GRANTED, and Plaintiff's Motion for Summary Judgment is DENIED, and this case is DISMISSED.