Harry ADAMS, et al., Plaintiffs,

v.

**ALLIANT TECHSYSTEMS INC.,
and Hercules Incorporated,
Defendants.**

**No. CIV.A.7:99CV00813.**

United States District Court,
W.D. Virginia,
Roanoke Division.

Aug. 23, 2002.

John Gregory Webb, Gary Wheeler Kensall, Michie, Hamlett, Lowry, Rasmussen & Tweel, Charlottesville, VA, Charles Richard Cranwell, Cranwell, Cranwell, Moore & Bullington, PLC, Roanoke, VA, Reuben A. Gyttman, Brian P. McCafferty, Charles V. Fifth, Provost & Umphrey, Washington, DC, Brent Coon, Provost & Umphrey Law Firm, LLP, Beaumont, TX, for Plaintiffs.

Linda Davis Frith, Nancy Fuller Reynolds, Frith, Anderson & Peake, PC, Roanoke, VA, for Defendants.

## MEMORANDUM OPINION

WILSON, Chief Judge.

This is a personal injury action brought by plaintiffs, employees or former employees at the Radford Army Ammunition Plant ("Arsenal"), against defendants, Alliant Techsystems, Inc. and Hercules Incorporated, for hearing loss plaintiffs allegedly suffered while working at the Plant. On May 7, 2002, this court entered a memorandum opinion granting in part and denying in part defendants' first motion for summary judgment. This matter is before the court on plaintiffs' motion for reconsideration. Plaintiffs argue that the court erroneously decided that Virginia's statute of limitation applied to their claims because: (1) not all of the Arsenal is a feder-

al enclave under the exclusive jurisdiction of the United States and governed by 16 U.S.C. § 457, (2) the defendants agreed not to assert Virginia's statute of limitations, (3) 16 U.S.C. § 457 does not make Virginia's statute of limitations applicable to these claims, and (4) even if Virginia's statute of limitations applies, there are questions of fact for the jury regarding fraudulent concealment that would toll Virginia's statute of limitations. For the reasons stated below the court will not reconsider its summary judgment opinion.

## I.

■ Plaintiffs' argument that part of the Arsenal is not on a federal enclave subject to the National Parks Act, 16 U.S.C. § 457, is a new one, not raised while the summary judgment motion was pending. After the court ruled, and well after the issue was effectively closed, plaintiffs submitted evidence which they claim raises the prospect that some plaintiffs, although they cannot even say which plaintiffs, may have worked on Arsenal property that adjoined but was not within the federal enclave. The issue has been fairly closed and the court will not reconsider it.

In their summary judgment memorandum, defendants state:

> In April 1942, the Commonwealth of Virginia ceded jurisdiction over the realty comprising the Plant to the United States. The Commonwealth reserved only the jurisdiction to serve civil and criminal process on the Plant realty. Consequently, the Plant became a federal enclave with all the rights and obligations of a federal domain.

(Mem. in Supp. of Defs' First Summ. J. Mot., at 2). In support of this proposition, defendants submitted the affidavit of Chuck Gardner, Contract Specialist and former Safety Director at the Radford Army Ammunition Plant. In his affidavit, Gardner stated, "In April 1942, by Deed of Cession, the Commonwealth of Virginia ceded exclusive jurisdiction to the United States of America to all realty comprising the Plant, retaining jurisdiction only with regard to the service of civil or criminal process." [1]

In their Opposition Memorandum, plaintiffs recognized defendants' assertion that "the Radford Arsenal is a federal enclave" governed by federal law (Opp. to Def.'s First Mot. for Summ. J. at 17.), and did not contest the point. In fact, plaintiffs argued that the National Parks Act applies. Plaintiffs argued that defendants were not entitled to governmental immunity for injuries that occurred at the Arsenal because "personal injuries occurring in federal enclaves are subject to state tort law pursuant to 16 U.S.C. § 457." (*Id.* at 14). According to plaintiffs, "16 U.S.C. § 457 makes clear that plaintiffs may obtain recovery for damages under state law for persons injured on federal enclaves." (*Id.* at 18). Therefore, in their words: "Virginia substantive law on negligence does apply here and Defendants are unable to

---

1. The 1942 Deed of Cession, which defendants attached to Gardner's affidavit, supported their argument that the property comprising the Arsenal is a federal enclave under the exclusive jurisdiction of the United States. (Mem. in Supp. of Defs' First Summ. J. Mot., Exhibit C–1). Plaintiffs did not challenge the affidavit until the court ruled. They now argue, in part, that because the deed shows that the Commonwealth of Virginia retained jurisdiction to serve process, the United States did

not obtain exclusive jurisdiction. The argument is a nonstarter—first, because it is late and second, and more fundamentally, because it is wrong. *See United States v. State Tax Commission of Mississippi,* 412 U.S. 363, 371, 93 S.Ct. 2183, 37 L.Ed.2d 1 (1973) (finding "no question" that tracts of land ceded to the United States subject only to the right of the state to serve civil and criminal process is subject to the United States' exclusive legislative jurisdiction).

assert any federal immunity (or pre-emption) based solely on the fact that the Radford Arsenal is a federal enclave." (*Id.*) Plaintiffs repeated this argument during the summary judgment hearing. Until they moved for reconsideration, plaintiffs produced no evidence contradicting defendants' affidavits and never challenged the assertion that the Arsenal was on a federal enclave; instead, they consistently argued that the National Parks Act made state law applicable to personal injury actions occurring on federal enclaves.

In short, before the court issued its May 7, 2002 opinion, both parties agreed that the Arsenal was on a federal enclave, a fact incidentally supported by the record. The issue was properly before the court, and the court decided it, stating that it would grant judgment in the cases listed in Appendix A of the court's May 7, 2002 opinion.[2] Accordingly, the court finds no reason to reconsider the issue.

## II.

█ Plaintiffs argue that when this case was dismissed by the Minnesota state court based on *forum non conveniens* the defendants "clearly agreed not to apply a two-year statute of limitations period." Alternatively, plaintiffs argue that summary judgment is inappropriate because there is a genuine question of material fact as to the terms of the agreement. The court rejects both arguments.

The submissions of the parties, including the Minnesota court's order, disclosed no genuine issue of material fact as to the terms of the agreement. All of the evidence before the court indicated, and still indicates, that defendants agreed to waive any statute of limitations defense that was not available to them in Minnesota. The Minnesota court's order granting defendants' motion to dismiss based on *forum non conveniens* states that the "dismissal is GRANTED on the condition that defendants waive defenses involving: personal jurisdiction, service of process, and statutory limitations which did not exist in Minnesota as of July 1, 1997." (Mem. in Supp. of Defs' First Summ. J. Mot., Ex. A). Also, in their October 30, 1997 Reply Memorandum submitted to the Minnesota court, defendants stated that they "would not oppose the inclusion within the Court's dismissal Order of appropriate language to state that the Defendants agree to waive defenses in Virginia based on personal jurisdiction, process, and statute of limitations which did not exist in Minnesota as of July 1, 1997, the date [the] action was filed with the Court." (Opp. to Defs' First Mot. for Summ. J., Ex. 4). Faced with this clear language, plaintiffs now argue that, in discussions between the parties during the Minnesota litigation, defendants agreed not to assert Virginia's two-year statute of limitations.[3] However, plaintiffs never marshaled any evidence regarding these

---

**2.** According to plaintiffs, the court *sua sponte* exercised federal question jurisdiction. This argument is clearly wrong. The issue of whose law applies does not arise in the context of the jurisdictional foundation of these cases. Rather, the issue of whose law applies arises solely because there was an agreement that defendants would not assert any statute of limitations defense that was not available to them in Minnesota, and the court has simply decided that § 457 directed the Minnesota court to apply Virginia's statute of limitations. Whether the case before this court is brought under this court's federal question or diversity

jurisdiction is not material to the question of whose law applied in Minnesota and, therefore, is irrelevant in determining which state's statute of limitations was available to defendants as a defense in the Minnesota court.

**3.** Defendants have not raised, and the court has no reason to determine the applicability of Virginia code § 8.01–232 which provides, in part, that an unwritten promise not to plead the statute limitations is void unless the failure to enforce that promise "would operate as a fraud on the promisee." Va.Code Ann. § 8.01–232 (Michie 2000)

discussions, and the time to do so has passed.

Plaintiffs also argue that since defendants did not assert in the Minnesota court that Virginia's statute of limitations would apply under the National Parks Act, defendants cannot assert Virginia's statute of limitations in this court. However, nothing indicates that defendants waived the ability to assert Virginia's statute of limitations. Instead, the submissions showed only that defendants agreed to waive any statute of limitations defense that was not available in the Minnesota court on July 1, 1997. As the court explained in its summary judgment opinion and reiterates in this opinion, the National Parks Act would have required the Minnesota court to apply Virginia's statute of limitations. Since defendants did not waive statute of limitations defenses that were available in the Minnesota state court, defendants can assert Virginia's statute of limitations made applicable by § 457.[4]

### III.

As the court held in its summary judgment opinion, the National Parks Act, 16 U.S.C. § 457, has its own choice of law rule: the court must apply "the law of the State within the exterior boundaries of which [the enclave] may be," including the surrounding state's statutes of limitations.[5] Plaintiffs argue that the court should reconsider that holding. They contend that the Act incorporates only state substantive law and not state procedural law and that, in Virginia, statutes of limitations are procedural laws that affect the legal remedy and not the right itself. It follows, plaintiffs argue, that the Act did not absorb Virginia's statutes of limitations. The court concludes, however, that although the National Parks Act does not incorporate state procedural housekeeping rules, such as rules of evidence or civil procedure, the Act does incorporate outcome determinative state law, including statutes of limitations, as in cases arising under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq.* ("Lands Act"). The Supreme Court's opinion in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), is instructive.[6]

In *Chevron Oil,* the Supreme Court applied the Lands Act, which is similar and

---

4. In its memorandum opinion, this court calculated the statute of limitations from July 1, 1997—the date the Minnesota action commenced. The court, therefore, initially dismissed only those plaintiffs whose claims were clearly barred by the statute of limitations on July 1, 1997, when the Minnesota action was filed. The court has not yet decided and has not ruled on the application of the memorandum opinion to other plaintiffs whose claims may also have been be barred by the statute on July 1, 1997, nor to those plaintiffs whose claims are barred by the subsequent running of the statute from the time following dismissal of the Minnesota action on December 31, 1997 until the filing of this action on November 9, 1999.

5. Section 457 provides:

In the case of the death of any person by the neglect or wrongful act of another within a national park or other place subject to the exclusive jurisdiction of United States, within the exterior boundaries of any State, such a right of action exist as though the place were under the jurisdiction of the State within whose exterior boundaries such place may be; and in any action brought to recover on account of injuries sustained in any such place, the right to the parties shall be governed by the laws of the State within the exterior boundaries of which it may be.

16 U.S.C. § 457.

6. *Chevron Oil* was overruled on other grounds by *Harper v. Virginia Department of Taxation,* 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993). In *Chevron Oil,* the Court faced a retroactivity issue. The Court found that it was not required to apply its holding retroactively. In *Harper,* the Court overruled *Chevron Oil's* reasoning regarding the retroactive application of judicial decisions.

analogous to the National Parks Act. "The Lands Act makes the Outer Continental Shelf, including fixed structures thereon, an area of exclusive federal jurisdiction." *Chevron Oil*, 404 U.S. at 100, 92 S.Ct. 349. "The Act extends the laws of the United States to this area ... and provides that the laws of the adjacent State shall also apply '[t]o the extent that they are applicable and not inconsistent' with applicable federal laws, 43 U.S.C. § 1333(a)(2)." *Id.*[7] In *Chevron Oil*, the plaintiff was injured while working on a drilling rig on the Outer Continental Shelf off the Louisiana coast. *Id.* at 98, 92 S.Ct. 349. The District Court found the case barred by Louisiana's one-year statute of limitation for personal injury actions. *Id.* at 99, 92 S.Ct. 349. The Court of Appeals reversed and found that the admiralty doctrine of latches applied. "The Court of Appeals attached significance to the fact that [Louisiana's statute of limitation] 'prescribes,' rather than 'preempts,' such actions. Under Louisiana law 'prescription,' unlike 'preemption,' bars the remedy but does not formally extinguish the right to recovery." *Id.* at 102, 92 S.Ct. 349.

The Supreme Court, however, held that under the Lands Act the statute of limitation of the adjacent state, in that case Louisiana, became the federally enforced statute of limitation for personal injury actions occurring on the Outer Continental Shelf. *Id.* at 100, 92 S.Ct. 349. Under the

Lands Act, state law became federal law. *Id.* Thus, the "Lands Act supercedes the normal choice-of-law rules that the forum would apply," *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 482 n. 8, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981), and "is itself a Congressionally mandated choice of law provision requiring that the substantive law of the adjacent state is to apply." *Union Texas Petroleum Corp. v. PLT Engineering Inc.*, 895 F.2d 1043, 1050 (5th Cir.1990). The *Chevron Oil* Court found that the prescriptive nature of Louisiana's statute of limitation did not effect its application to Lands Act cases. *Id.* at 102, 92 S.Ct. 349. The Court made clear that the statute of limitation of the adjacent state was part of the substantive law the Lands Act required the court to apply even if the state defined its own statute of limitation as affecting only the remedy and not the substantive right. Citing *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), the Court stated that a statute of limitation upon a remedy was not a "mere 'housekeeping rule[ ]' embodied in state law." *Id.* at 103 n. 6, 92 S.Ct. 349. Instead, a "state statute of limitation upon a remedy is coordinated with the substance of the remedy and is no less applicable under the Lands Act." *Id.* at 103, 92 S.Ct. 349.[8]

The court finds Lands Act cases closely analogous to National Parks Act

---

7. The Lands Act reads, in part: "To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State as of August 7, 1953 are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf ...." 43 U.S.C. § 1333(a)(2).

8. Plaintiffs have cited § 457 cases within the circuit that they maintain support their argument that the National Parks Act does not

require the application of a state's procedural rules. They cite, for example, *Reed v. Charizio*, 183 F.Supp. 52, 53 (E.D.Va.1960) which concluded that "[t]he language of 16 U.S.C. § 457, providing that 'the rights of the parties shall be governed by the laws of the State within the exterior boundaries of which it may be', relates to the substantive rights and not to the venue provisions." Reed, however, not only was decided before *Chevron*, it more importantly involved "housekeeping rules," rules the Supreme Court in *Chevron* distinguished from statutes of limitations.

cases and finds the reasoning of *Chevron Oil* applicable here. The National Parks Act, like the Lands Act, requires the application of certain state laws as federal laws in geographic areas under the United States' exclusive legislative jurisdiction.[9] Indeed, in an earlier case, the Supreme Court noted that, under the Lands Act, artificial islands on the Outer Continental Shelf were to be treated as "federal enclaves in an upland State," *Rodrigue v. Aetna Casualty and Surety Co.*, 395 U.S. 352, 355, 89 S.Ct. 1835, 23 L.Ed.2d 360

(1969), and "as if they were in an area of exclusive Federal jurisdiction located within a State." *Id.* at 365, 89 S.Ct. 1835 (internal quotations and parentheses omitted). The Fourth Circuit, likewise, recognized the similarities between these statutes when it stated "the National Parks Act, 16 U.S.C.A. § 457, and the Outer Continental Shelf Lands Act, 43 U.S.C.A. §§ 1331–1343, both ... adopt the state statutes applicable to the particular area in which the federal reservation is located." *Greene v. Vantage Steamship Corp.*, 466

**9.** "The federal law of every enclave includes state law which was in force at the time of the cession, where such state law is not inconsistent with federal law or policy. [citations omitted] This ensures that no federal enclave, regardless of size, would be left without laws." *Lord v. Local Union No.2088, Int'l Bd. of Elec. Workers*, 646 F.2d 1057, 1059–1060 (5th Cir.1981) (quoting lower court decision). Generally speaking, "laws of the state adopted after the cession are without any force or effect on the federal enclave." *Id.* However § 457 creates two important, but limited, exceptions to this rule. First, it authorizes suits under state statutes "abolishing the common-law rule that the death of the injured person abates the action for negligence." *Murray v. Joe Gerrick & Co.*, 291 U.S. 315, 319, 54 S.Ct. 432, 78 L.Ed. 821 (1934). Second, it absorbs the state personal injury law that is in effect on the date the personal injury arose. In both respects it is a gap—filling statute. Its overarching purpose is to insure that there is a body of law applicable to wrongful death and personal injury actions that keeps pace with the law of the surrounding jurisdiction. Contrary to Plaintiffs' assertion, there is no clear legislative history accompanying the National Parks Act bearing on the question before the court. In fact, the only clear purpose the legislative history expresses is the purpose of ensuring that a "right of action survived to the legal representatives in the case of death of a person by wrongful act or neglect of another" if it would survive if the accident occurred in the surrounding state. H.R.Rep. No. 369, 70th Cong., 1st Sess; *see also* 69 Cong. Rec. 1486. However, the clear language of the statute, in light of the state of the law before its enactment, discloses its purpose.

In any event, § 457 by its own force does not extend all state laws to federal enclaves, only its personal injury laws and then only to the extent that they are not inconsistent with federal regulation over the same subject. As the court noted in its memorandum opinion granting defendants' motion for summary judgment, the production of munitions for the Army is uniquely a federal interest. Therefore, even though the court denied defendants' derivative sovereign immunity claim, it does not follow that plaintiffs may assert a breach of duty based on any state standard or regulation that is inconsistent with the operation of a federal munitions plant. *See James Stewart & Co. v. Sadrakula*, 309 U.S. 94, 103, 60 S.Ct. 431, 84 L.Ed. 596 (1940). ("[T]he authority of state laws or their administration may not interfere with the carrying out of a national purpose."); *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 181, 108 S.Ct. 1704, 100 L.Ed.2d 158 (1988) ("[A] federally owned facility performing a federal function is shielded from direct state regulation, even though the federal function is carried out by a private contractor"). Of course, this does not mean that state standards and regulations will not govern defendants' duties. The legislative and executive branches determine what is and what is not consistent with the operation of a federal munitions plant. The Facility Use Contract between the government and the defendants allocates defendants' duties and responsibilities vis-à-vis their employees. (Aff. of Denise P. Huffman, attach.) Any duty or responsibility so allocated conclusively establishes that the duty or responsibility is consistent with the operation of the plant and, therefore, a suitable standard for determining defendants' liability for negligence.

F.2d 159, 166 n. 9 (4th Cir.1972). The court finds the analogies compelling. Thus, just as the Lands Act provides that the law of the adjacent state, including its statute of limitations, applies as federal law in actions arising from the Outer Continental Shelf, the National Parks Act provides that the personal injury law of the state surrounding the enclave, including its statute of limitations, applies as federal law in actions for personal injuries arising from a federal enclave such as the Arsenal.

The court recognizes, however, that other courts have interpreted the National Parks Act differently. *See Jenkins v. Whittaker Corp.*, 785 F.2d 720, 724 n. 6 (9th Cir.1986) (indicating that § 457 adopts the choice-of-law rules of the state surrounding the enclave); *Burgio v. McDonnell Douglas Inc.*, 747 F.Supp. 865 (E.D.N.Y.1990) (same); *Quadrini v. Sikorsky Aircraft*, 425 F.Supp. 81 (D.Conn.1977) (indicating that § 457 adopts neither the internal law nor choice-of-law rules of the state surrounding the enclave and leaves federal courts free to apply their own choice-of-law rules). *But see Vasina v. Grumman Corp.*, 644 F.2d 112, 117 (2d Cir.1981) (declining to follow the *Quadrini* court's interpretation of § 457). In *Burgio*, the Eastern District of New York rejected an analogy to the Lands Act and instead analogized the National Parks Act to the Federal Tort Claims Act, 28 U.S.C.

§ 1346, and *Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). *Burgio*, 747 F.Supp. at 866–870. The *Burgio* court held that the National Parks Act was not its own choice-of-law rule. Instead of adopting the internal law of the state surrounding the enclave, the *Burgio* court held that the National Parks Act adopted the whole law, including ·the choice-of-law rules, of the state surrounding the federal enclave. Here, under the *Burgio* court's interpretation of the National Parks Act, the Minnesota court would have had to apply the choice-of-law rules of Virginia to determine what law, and what statute of limitations, to apply.[10]

The court rejects this interpretation and finds instead that the National Parks Act is more analogous to the Lands Act than to the Federal Tort Claims Act, for the reasons the court has already stated. Moreover, the *Burgio* court's interpretation of the National Parks Act embraces the controversial renvoi doctrine, which the court finds problematic.

The general view is that where a question comes before a court which, according to the law of the forum as to conflict of laws, is to be determined by the law of another jurisdiction, the question is determined by the law of such other jurisdiction applicable to the precise question; the law of such other

---

**10.** Even under *Burgio* 's interpretation, the question of whose law governs would remain elusive. *See* Restatement (Second) of Conflict of Laws § 8 (1971). The restatement provides:

(1) When directed by its own choice-of-law rule to apply "the law" of another state, the forum applies the local law of the other state, except as stated in Subsection (2) and (3).

(2) *When the objective of the particular choice-of-law rule is that the forum reach the same result on the very facts involved as would the courts of another state,* the forum will apply the choice-of-law rules of the

other state, subject to considerations of practicability and feasibility.

(3) When the state of the forum has no substantial relationship to the particular issue or the parties and the courts of all interested states would concur in selecting the local law rule applicable to this issue, the forum will apply this rule.

*Id.* (emphasis added). Additionally, comment g states that the renvoi doctrine should apply only when the purpose sought to be achieved is "that the forum should reach the same result on the very facts involved as would the courts of the other state." *Id.*, cmt. g.

jurisdiction as to conflict of laws is not taken into consideration.

Under the doctrine of renvoi, the court of the forum, in determining the question before it, must take into account the whole law of the other jurisdiction, including not only the local law of such other jurisdiction, but also its rules as to conflict of laws, and then apply the law as to the actual question which the rules of the other jurisdiction prescribe, which may be the law of the forum. The doctrine of renvoi has been repudiated by many American authorities.

16 Am.Jur.2d Conflict of Laws § 5.

The *Burgio* court's interpretation of § 457 is not exactly the same as the traditional renvoi doctrine because the genesis of the *Burgio* court's renvoi doctrine is a federal statute and not a state choice-of-law rule. However, the problems generally associated with the renvoi doctrine—the difficulty in interpreting and applying a foreign jurisdiction's choice-of-law rule, and the perplexing choice of law rules renvoi creates, *see Wooton v. Pumpkin Air, Inc.*, 869 F.2d 848, 852 (5th Cir. 1989)—still counsel against its adoption in the context of the National Parks Act.

■ Under an interpretation of the National Parks Act that includes the renvoi doctrine, the Minnesota court was required to apply Virginia's choice-of-law rules. According to Virginia's choice-of-law rule, " 'the *lex loci* will govern as to all matters going to the basis of the right of action itself, while the *lex fori* controls all that is connected merely with the remedy.' In other words ... apply the substantive law of ... the place of the wrong, and the procedural law of Virginia." *Jones v. R.S. Jones and Associates, Inc.*, 246 Va. 3, 431 S.E.2d 33, 34 (1993) (citation omitted).[11]

Therefore, the Minnesota court was required to look to the substantive law of the place of the wrong. In this case, the place of the wrong is the Radford Army Ammunition Plant—a federal enclave. The substantive law of the federal enclave is not Virginia law, but federal law—in this case § 457, which is where the Minnesota court started. In short, under the renvoi interpretation of the National Parks Act, the Minnesota court was directed by the National Parks Act to apply the choice-of-law rules of Virginia which directs the court back to the National Parks Act. "Most commentators counsel against the adoption of [the renvoi] doctrine [for this reason]: [w]hat occurs is a never ending circular situation where the issue is forever batted from state to state"—or in this case from federal enclave to state. *Nailen v. Ford Motor Co.*, 873 F.2d 94, 96 (5th Cir.1989). In the words of the Fifth Circuit in a case under the Lands Act, "[w]hile it may be argued that this directive merely points courts to a secondary, state-imposed set of conflicts rules, we are confident the Supreme Court would not lure us into this potential hall of mirrors." *Wooton*, 869 F.2d at 852.

■ In summary, in a personal injury action where the injury occurs on a federal enclave under the exclusive jurisdiction of the United States, the National Parks Act requires the forum to apply the substantive law of the state surrounding the enclave, including its statutes of limitations. Here, the National Parks Act would have required the Minnesota court to apply Virginia's statute of limitations. Therefore, the defendants did not waive the Virginia statute of limitations defense because that defense was available to the defendants at the time of the Minnesota order.

11. As an aside, Virginia does not recognize the renvoi doctrine. *Asbestos Removal Corp.* *of America, Inc. v. Guaranty Nat. Ins. Co.*, 846 F.Supp. 33, 35 (E.D.Va.1994).

## IV.

■ Plaintiffs argue that the court erroneously decided that they had not marshaled sufficient evidence to equitably toll the statute of limitations. To that end, plaintiffs once again point out that defendants did not file workers compensation reports and OSHA logs documenting hearing losses at the Arsenal. The court rejects the argument for the reasons it stated previously.[12] Additionally, and perhaps equally fundamental, the evidence plaintiffs marshaled was not plaintiff specific. Accordingly, the court declines to reconsider the issue.

## V.

For the reasons stated above, the court finds plaintiffs' arguments for reconsideration unpersuasive. Therefore, the court will not amend its May 7, 2002 Opinion denying in part and granting in part defendants motion for summary judgment.

---

12. Moreover, an employer has no obligation to file workers' compensation reports for injuries that are not subject to the Workers' Compensation Act. *See* Va.Code Ann. § 65.2–101, 65.2–900 (Michie 1995 & supp.) (Requiring reporting only for "injuries" as defined in § 65.2–101 of the Workers' Compensation Act). The Virginia Supreme Court has held that, prior to July 1, 1997, hearing loss was not an injury within the purview of the Virginia Workers' Compensation Act. *Adams v. Alliant Techsystems, Inc.* 261 Va. 594, 544 S.E.2d 354, 356 (2001).