**Steven DEUTSCH and Harvey Deutsch, Petitioners,**

**and**

**Fred A. Hubbs, Petitioner–Appellant,**

**v.**

**John KALCEVIC, Paulie Zimbelman, Bruce Klausner, and Sheryl Wailes, Respondents,**

**and**

**Lost Creek Ground Water Management District, Respondent–Appellee.**

No. 06CA0273.

Colorado Court of Appeals, Div. A.

June 1, 2006.

Grimshaw & Harring, P.C., Wayne B. Schroeder, Jody Harper Alderman, Carrie S. Bernstein, Denver, Colorado, for Petitioner–Appellant.

Lind, Lawrence & Ottenhoff, LLP, Richard T. LiPuma, Bradley C. Grasmick, Greeley, Colorado, for Respondent–Appellee.

DAVIDSON, Chief Judge.

Claiming violations in the elections of directors of respondent Lost Creek Ground Water Management District (the district), petitioners, Fred A. Hubbs, Steven Deutsch, and Harvey Deutsch, filed a petition pursuant to the Uniform Election Code, § 1–1–113, C.R.S.2005, which provides that an elector may seek relief in the trial court for an order requiring compliance with the Code. After a bench trial, the court ruled that Hubbs and the Deutsch petitioners lacked standing in part, and otherwise denied the remaining claims. Hubbs appeals, contending that the court's judgment was in error. We affirm in part, reverse in part, and remand.

## I. Background

The district is a duly created ground water management district operating pursuant to the provisions of the Colorado Ground Water Management Act set forth at § 37–90–101, et seq., C.R.S.2005 (GWMA). The district includes seven divisions. Each division is represented by a single director, and the board of the directors comprises the seven directors. See § 37–90–121, C.R.S.2005. Each director is elected for a term of four years by a plurality vote of the taxpaying electors of the division of the district he or she represents. Section 37–90–127, C.R.S.2005. The district holds elections for approximately half of the board positions every two years, so that the directors serve staggered terms.

Section 37–90–126, C.R.S.2005, provides that when a vacancy on the board occurs, it is to be filled by the remaining board members. In 2004, the term of the director for Division 3 expired. Although the district published a call for candidate nominations for the position, it received none. Thus, pursuant to the statutory provision, the board appointed respondent John Kalcevic, who is not a party to this appeal.

The following year, in November and December, the district published a call for nominations for directors for Divisions 2, 4, and 6 but, as relevant here, not for Division 3. Hubbs filed a petition to run for the position of director for Division 3, but, because the district had not published a call for nominations for that division, Hubbs's petition was rejected. Kalcevic currently continues to serve as the director for Division 3.

In January 2006, Hubbs and the other petitioners filed this action, alleging, inter alia, that the district, the chair of the board of directors, and the manager of Division 3 were in breach of their duties under the Election Code by refusing to allow Hubbs to seek election as the director for Division 3 for a term starting in 2006. The trial court disagreed and denied Hubbs's request that he be automatically installed as the director for Division 3 or, alternatively, that an election for Division 3 be immediately held.

## II. Does Hubbs Have Standing to Challenge Elections in the Other Divisions?

As a threshold matter, the trial court found that Hubbs had standing to challenge election issues pertaining to Division 3 but not to challenge elections in the other divisions. The court determined that at the time of the filing, Hubbs was not a "taxpaying elector" of those other divisions of the district as defined by § 37–90–103(18), C.R.S. 2005. Hubbs contends that this was error. We disagree.

Standing is a question of law that we review de novo. Ainscough v. Owens, 90 P.3d 851, 856 (Colo.2004). Standing exists if the plaintiff has suffered an injury in fact to a legally protected interest as contemplated by statutory or constitutional provisions. See, e.g., Wimberly v. Ettenberg, 194 Colo. 163, 168, 570 P.2d 535, 539 (1977). Subject to several exceptions not at issue here, a plaintiff may not assert the rights or legal interests of another to obtain standing. See State Bd. for Cmty. Colls. & Occupational Educ. v. Olson, 687 P.2d 429, 435 (Colo.1984); see also Warth v. Seldin, 422 U.S. 490, 509–10, 95 S.Ct. 2197, 2210–11, 45 L.Ed.2d 343 (1975).

Section 37–90–127 specifically provides that directors are elected by the "taxpaying electors of the division of the district which they represent"(emphasis supplied). It is undisputed that Hubbs is a taxpaying property owner only within Division 3. Although Hubbs argues that, as a taxpaying elector within the district, he is entitled to challenge

elections for director in other divisions of the district, his legal interest regarding director elections, as provided by statute, lies only in Division 3. Thus, Hubbs has no legal interest outside of Division 3 and, consequently, no standing to challenge any director elections in the other divisions.

### III. Does § 1–12–207, C.R.S.2005, of the Election Code Apply to Director Vacancies of Ground Water Management Districts?

■ The Election Code requires that appointees to vacancies in office serve only until the next regular election. Specifically, § 1–12–207(1), C.R.S.2005, provides: "The appointee shall serve until the next regular election, at which time any remaining unexpired portion of the term shall be filled by election." Relying on that provision, Hubbs contends that the trial court erred in concluding that Kalcevic, who was appointed to fill the director vacancy in 2004, was not required to stand for election during the February 2006 district elections. We agree.

The GWMA governs ground water management districts. Section 37–90–127 governs the elections of directors, and § 37–90–126 governs director vacancies. Section 37–90–126 provides: "When a vacancy occurs on the board [of directors], such vacancy shall be filled by the remaining members of the board." Thus, pursuant to § 37–90–126, the board of directors appointed Kalcevic to fill a director vacancy that arose in 2004.

A director who is elected—as opposed to appointed—must stand for election every four years. See § 37–90–127. However, no provision of the GWMA addresses when an appointed director must stand for election. Although there are at least three possible times when this could occur—(1) during the next round of district elections; (2) when the remaining portion of the four-year term expires; or (3) exactly four years after the date when the director was appointed—the GWMA is silent on this issue.

Here, because no instructions for this contingency were provided in the GWMA, the trial court relied on the rule of statutory construction that when the legislature includes a provision in one statute, but omits that provision from another similar statute, the omission is evidence of its intent. Accordingly, the court concluded that, contrary to Hubbs's argument, the General Assembly intended that the Election Code provision on board vacancies did not apply to elections under the GWMA.

However, despite this rule of statutory construction, and unlike the trial court, we cannot infer from its statutory silence how the General Assembly intended to treat director appointees under the GWMA. This is because, as discussed, there are at least three possible times when an appointed director could be required to stand for election. Legislative silence, without more, is unhelpful when, as here, there are several viable answers and nothing in the surrounding statutory language gives any guidance as to which one the General Assembly had in mind.

Thus, contrary to the trial court's ruling, we will not presume that by failing to address the issue in the GWMA, the General Assembly intended to signal that the vacancy procedure set forth in the Election Code is inapplicable to GWMA vacancies. Indeed, we note that the provisions governing vacancies in the Election Code were enacted in 1992, twenty-seven years after the provisions governing ground water management districts in the GWMA. *Compare* Colo. Sess. Laws 1992, ch. 118, § 1–12–207 at 802, *with* Colo. Sess. Laws 1965, ch. 319, § 148–18–26 at 1260–61 (now codified as § 37–90–126). *See generally Salazar v. Indus. Claim Appeals Office*, 10 P.3d 666, 667 (Colo.App.2000) (when two statutes cannot be harmonized, the later in time statute controls).

Furthermore, Hubbs argues, not only is it improper to infer any legislative intent that the Election Code not apply to the GWMA, but, to the contrary, the very purpose of the later enacted Election Code was to provide answers to election procedures not included in other statutes. We agree. By its plain terms, the Election Code not only sets out procedures for elections not addressed elsewhere, but also fills gaps in the procedural details of elections that are partially provided for in other statutes. Indeed, the Election Code "provides legislative gap-fillers" to

make election procedures uniform for as many governmental units as possible. *See* Norman F. Kron, Jr., *Pssst—There's a New Election Code*, 22 Colo. Law. 1703, 1703 (1994). This is not only practical, but necessary; without the default procedures set forth in the Election Code, governmental subdivisions cannot know which election procedures apply when their respective enabling acts contain gaps. *Cf. Adams v. Alliant Techsystems Inc.*, 218 F.Supp.2d 792, 800 (W.D.Va.2002) (discussing function of gap-filling statutes).

Moreover, because the Election Code addresses the issue here, and we may presume nothing from the absence of a provision in the GWMA, we conclude there is no conflict between the statutes. Hence, there is no need to apply, as the trial court did, the rule of statutory interpretation requiring the application of the more specific of two conflicting statutes. *See People v. Triantos*, 55 P.3d 131, 134 (Colo.2002) (statutes should be construed to avoid conflict); *see also People v. Frazier*, 77 P.3d 838, 841 (Colo.App.2003) (only when statutes irreconcilably conflict does the more specific statute prevail over the more general statute), *aff'd*, 90 P.3d 807 (Colo.2004).

Accordingly, pursuant to § 1–12–207, because Kalcevic was appointed in 2004 and the district's next regular elections were scheduled for February 2006, Kalcevic was required to stand for election at that time. Because the district did not hold an election for Kalcevic's position in February 2006, it must hold such an election at the earliest possible time following remand.

The judgment of dismissal for lack of standing is affirmed. In all other respects, the judgment is reversed, and the case is remanded to the trial court with instructions to order the district to hold an election consistent with this opinion.

Judge PLANK * and Judge NEY * concur.